IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01449-RBJ-KLM

THOMAS CORTEZ, a Colorado resident,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Plaintiff's Motion to Amend** [Docket No. 26; Filed January 12, 2012] and **Defendant's Motion to Amend Its Answer and Jury Demand** [Docket No. 29; Filed January 23, 2012] (collectively, the "Motions"). The Motions are referred to this Court for disposition. [## 27, 30]. The Motions are fully briefed and ripe for review. The Court has reviewed the Motions, the briefing, the case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court **GRANTS** Plaintiff's Motion [#26] and **DENIES AS MOOT** Defendant's Motion [#29].

    The Court incorporates by reference the facts as described in its Recommendation issued January 30, 2012 [#33], and adopted by the District Judge on February 22, 2012 [#38]. The Motions at issue are related: Plaintiff seeks to add a reformation claim to his Complaint [#2], in part, to address the legitimacy of his common-law marriage to Tanya Cortez as challenged by Defendant, and Defendant seeks to amend its Answer [#4] to

1

remove any admissions recognizing the validity of Plaintiff's marriage and to deny that Plaintiff is insured pursuant to the policy held by Tanya Cortez, who is also known as Tanya Gonzales.

As a preliminary matter, the pleading amendment deadline expired on October 7, 2011. *Sched. Ord.*, [#16] at 9. Plaintiff's Motion was filed on January 12, 2012, and Defendant's Motion was filed on January 23, 2012. The Motions are therefore untimely. Accordingly, both parties must provide good cause for their failure to timely move for amendment pursuant to Fed. R. Civ. P. 16(b)(4).[1] If good cause is shown, the Court will then consider any arguments raised by the parties related to whether justice would be served by amendment. Specifically, the Court should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given, however, when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile.

---

[1] Although the Tenth Circuit has not explicitly adopted this test related to amendment of pleadings generally, it this Court's practice, and indeed the practice of other judges in this District, to resolve untimely motions to amend first by considering the Rule 16(b)(4) good cause standard as a threshold issue. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (explaining that the Court of Appeals "adopted a similar interpretation of Rule 16(b)([4])'s 'good cause' requirement in the context of counterclaims asserted after the [pleading amendment] deadline" (citation omitted)). *See also, e.g., Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 688 (D. Colo. 2000) (denying an untimely motion to amend solely on the basis of a failure to establish "good cause" within the meaning of Rule 16(b)(4)); *Nicastle v. Adams County Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011), *adopted by* 2011 WL1464588 (Apr. 18, 2011) (unpublished decisions) ("Because the Court finds no good cause to amend the scheduling order, [it] will not address whether leave to amend is appropriate under Rule 15."); *see also Schneider v. City of Grand Junction, Colo.*, No. 10-cv-01719-MSK-KLM, slip op. (D. Colo. Apr. 25, 2011) [Docket No. 77], *adopted by* slip op. (July 12, 2011) [Docket No. 87] (unpublished decisions) (reviewing untimely motion to amend only as to good cause standard pursuant to Rule 16(b)(4)). Simply, if good cause is not shown, the Court is not required to consider whether Rule 15(a) excuses that failure. *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1132 (10th Cir. 1987) ("We hold that a district court acts within the bounds of its discretion when it denies leave to amend for 'untimeliness' or 'undue delay.'").


*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Because the Motions were filed "after the deadline for amending the pleadings, the Court employs a two-step analysis, first determining whether [the parties have] shown good cause to modify the Scheduling Order under [Fed. R. Civ. P. 16(b)(4)], then evaluating whether [the parties have] satisfied the standard for amendment of pleadings under [Fed. R. Civ. P.] 15(a)." *Nicastle v. Adams County Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *1 (D. Colo. Mar. 14, 2011), *adopted by* 2011 WL1464588 (Apr. 18, 2011) (unpublished decisions); *Colo. Visionary Acad.*, 194 F.R.D. at 687. This two-step analysis has been explained as follows:

> Rule 16(b)[(4)]'s good cause standard is much different [from] the more lenient standard contained in Rule 15(a). Rule 16(b)[(4)] does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, good cause means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this Court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l. Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations omitted); *accord Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997) ("Rule 16(b)[(4)]'s 'good cause' standard is much different [from] the more lenient standard contained in Rule 15(a). . . . Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. . . ."). If a party fails to show good cause under Rule 16(b)(4), there is no need for the Court to move on to the second step of the analysis, *i.e.*, whether that party has, as to his or its respective Motion, satisfied the requirements of Rule 15(a). *Nicastle*, 2011 WL 1465586, at *3. The Court addresses each step in turn.

**I.      Good Cause to Modify the Pleading Amendment Deadline**

A Scheduling Order deadline, such as the pleading amendment deadline, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As noted above, to demonstrate good cause pursuant to Rule 16, the moving party must "show that it [was] diligent in attempting to meet the [pleading amendment] deadline, which means it must provide an adequate explanation for any delay." *Minter*, 451 F3d at 1205 n.4. "While rigid adherence to the pretrial scheduling order is not advisable," *SIL-FIO v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990), the pleading amendment deadline requires that parties conduct discovery efficiently and promptly in order to timely comply. *See Granite Southlands Town Center LLC v. Alberta Town Center, LLC*, No. 09-cv-00799-ZLW-KLM, 2010 WL 2635524, at *2 (D. Colo. June 8, 2010) (noting that "deadlines to amend a party's pleading are set at the outset of the case to require [parties] to prioritize their discovery and attempt to obtain information that may be relevant to claim amendment sooner rather than later."); *Sanchez v. City & Cnty. of Denver ex rel. Bd. of Water Comm'rs*, No. 07-cv-01805-MSK-BNB, 2007 WL 4557842, at *1 (D. Colo. Dec. 20, 2007) (unpublished decision) (noting that "the purpose of the deadline to amend and add contained in the Scheduling Order is to force the parties to make any known amendments immediately so that all discovery in the case, including the earliest discovery, is taken with the claims and defenses as the parties expect them to be").

However, "[t]he fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause for such amendment pursuant to Rule 16(b)[(4)]." *Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010) (citing *Pumpco*,

4

204 F.R.D. at 668-69). Here, both parties assert the acquisition of information by discovery conducted after the pleading amendment deadline as the basis for their respective proposed amendments.

Plaintiff states that he found notes in his insurance claim file which form the basis of his reformation claim. [#26] at 2. On December 15, 2011, counsel for Plaintiff conducted a Rule 30(b)(6) deposition of Defendant, during which he questioned Defendant's witness regarding the file notes. *Id.* Counsel states that he received the transcript of the deposition on January 4, 2012; Plaintiff filed the Motion at issue eight days later. *Id.* Defendant contends that Plaintiff acquired the insurance claim file on July 11, 2011, and Plaintiff does not challenge that assertion. *See* [#34] at 7.

Defendant explains that, before the initiation of this lawsuit, it requested documentation from Plaintiff supporting his assertion that he was married to the policyholder, Tanya Cortez, at the time of the accident. [#29] at 4. Plaintiff provided to Defendant an affidavit of Tanya Gonzales (also known as Tanya Cortez) and a "Declaration of Dependents and Common-Law Marriage." *Id.* Defendant accepted these documents and presumably relied on them when formulating its Answer. Subsequently, Defendant deposed Plaintiff on October 14, 2011, and inquired as to the common-law status of his alleged marriage. *Id.* at 5. Defendant represents that Plaintiff's responses demonstrate "a legitimate legal question . . as to whether Plaintiff was married to Tanya Gonzales pursuant to the common law at the time of the accident in issue." *Id.*

In consideration of these facts as well as the parties' arguments, the Court finds that neither side was particularly diligent in utilizing the information at his or its disposal. Plaintiff knew of the claim file notes as early as July 2011; Defendant knew of the potential issues

regarding Plaintiff's alleged common-law marriage certainly as early as October 2011, and likely even earlier (despite Plaintiff's representations to the contrary). That said, both parties contend that they confirmed their views regarding the new information they had received after the deadline for amendment of pleadings had expired.

In layperson terms, the Court believes the question of diligence is simply a wash, and the explanations offered for the delay in filing are minimally adequate. Considering the relatively early stage of this proceeding, namely that discovery closes on May 31, 2012 and the dispositive motion deadline is July 2, 2012, as well as the below evaluation regarding the merits of the Motions, the Court finds that good cause exists which satisfies the first step of the analysis pertaining to Rule 16(b)(4). It is thus appropriate for the Court to review the Motions pursuant to Rule 15(a).

## II.     Leave to Amend the Complaint and Answer

The Court has discretion to grant a party leave to amend its pleadings. *Foman*, 371 U.S. at 182; *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). The Court addresses the substance of each Motion separately, as follows.

### A.     Plaintiff's Proposed Reformation Claim

Plaintiff requests permission to amend his Complaint to add a reformation claim contending that Defendant should have offered UM/UIM coverage to him when Defendant

separated his and Tanya Cortez' insurance policies in April 2009. [#26] at 3. Plaintiff and Tanya Cortez ("Tanya") had previously held joint insurance policies with Defendant covering two automobiles: a Ford Escape and the Pontiac Sunfire which is the vehicle involved in the underlying accident. *See* [#36-1] at 11, 12 (Ford); [#36-3] at 1, 3 (Pontiac). Plaintiff additionally held a single policy with Defendant as to a Toyota Tacoma. [#36] at 3. In April 2009, Plaintiff asserts that he and Tanya informed their insurance agent that they were divorcing and requested issuance of separate policies. [#26] at 3.

As referenced above, Plaintiff relies on claim file notes indicating that, at the time when the policies were separated, the agent did not offer UM/UIM coverage to Plaintiff, and Defendant "missed [the] fact" that Plaintiff did not have UM/UIM coverage after the split of the policies in April 2009. *Id.* Plaintiff contends that the split of the policies implicated the issuance of a new policy to him individually, which in turn, invoked the statutory obligation of Defendant to notify Plaintiff of the option to purchase additional UM/UIM coverage. [#36] at 4. Plaintiff alleges that Defendant failed in its obligation, thus Plaintiff was left without UM/UIM coverage, which he now needs to cover the medical expenses arising from the underlying accident (in addition to the UM/UIM coverage affiliated with Tanya Cortez' policy, to which Plaintiff believes he is entitled). [#26-1] at 9-13.

Defendant's primary argument against allowing Plaintiff's requested amendment is that the proposed reformation claim is futile. *See* [#34]. Defendant asserts that the change to Plaintiff's policy at his and Tanya Cortez' request was simply a change to an existing policy and did not result in the issuance of a new policy. *Id.* at 6. Thus, Defendant believes that its obligation to affirmatively offer UM/UIM coverage was not reinstated. *Id.* Defendant avers that it fulfilled its statutory duty to offer Plaintiff UM/UIM coverage when it first issued

the applicable policy protecting the Pontiac Sunfire on March 12, 2008, because it offered the coverage, and two months later, Plaintiff rejected the coverage in writing.  *Id.* at 5. Defendant contends that the law governing UM/UIM coverage and insurance reformation clearly indicates that it was under no obligation to again offer UM/UIM coverage in April 2009, therefore rendering Plaintiff's proposed amendment futile.  *See id.*

Review of the exhibits to the parties' briefing demonstrates to the Court that, originally, Plaintiff and Tanya jointly held two automobile insurance policies with Defendant: policy number 148 2113-C12-06, which covered the 1997 Pontiac Sunfire, and policy number 63 7657-D08-06C, which covered the 2001 Ford Escape (the earliest policy is dated March 5, 2003 ([#36-1] at 1)).  *See* [#36-4] at 1; [#36-1] at 11.  The series of policy documents included as exhibits to the briefing indicate that Plaintiff and Tanya shared the policy for the Pontiac, numbered 148 2113-C12-06B, on March 12, 2009, for a period covering March 12, 2009, through September 12, 2009, without UIM benefits. [#36-3] at 5. The next document, prepared on April 30, 2009, showed a change to the Pontiac policy, then numbered 148 2113-C12-06C, held by Plaintiff only, for a period covering April 16, 2009, through September 12, 2009, also without UIM benefits.  *Id.* at 6.

Regarding policy number 63 7657-D08-06C covering the 2001 Ford Escape, policy documents demonstrate that Plaintiff and Tanya jointly held this policy during the period of October 8, 2008, through April 8, 2009, including UIM benefits, and again from April 8, 2009, through October 8, 2009, also including UIM benefits.  [#36-1] at 11, 12.  However, in a document prepared on April 30, 2009, the policy reflects the split, in that only Tanya is named as a policyholder for the period of April 16, 2009, through October 8, 2009, again including UIM benefits.  *Id.* at 13.

Colo. Rev. Stat. § 10-4-609, *et seq.* governs insurers' obligations related to UM/UIM coverage. Section 10-4-609(2) prescribes that "[b]efore the policy is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits." Thus, an insurer's obligation to offer UM/UIM benefits to an insured arises when a policy is 1) issued or 2) renewed. However, Colo. Rev. Stat. § 10-4-609(3) absolves the insurer of the requirement to notify the policyholder as to the availability of UM/UIM coverage once the policy holder has selected UM/UIM coverage or has rejected UM/UIM coverage in writing.

Plaintiff rejected UIM coverage as to the policy covering the Pontiac Sunfire in writing on May 20, 2008. [#36-4] at 1. At that time, the Pontiac policy was held jointly by Plaintiff and Tanya. Also at that time, Plaintiff and Tanya held a joint policy covering the Ford, which did include UIM coverage. [#36-1] at 10 (reflecting payment of $112.19 for UIM coverage in addition to liability coverage). In an affidavit attached to Plaintiff's reply in support of his Motion, Plaintiff explains that in May 2008, his insurance agent told him that he and Tanya "did not need to pay for UIM coverage on each vehicle." [#36-5] at 1. The agent explained that Plaintiff and Tanya "could pay for UIM on just one car and that [they] would be covered by UIM on any car [they] drove because [they] were married and living together." *Id.* This is offered as the reason why Plaintiff rejected the UIM coverage in writing as to the joint policy covering the Pontiac, but he and Tanya paid for UIM coverage as to the joint policy covering the Ford. *Id.*

Plaintiff's explanation is not inconsistent with case law governing UM/UIM coverage in Colorado.  The Colorado Supreme Court explained that "the important policy behind UM/UIM insurance [is] to protect persons from the often-devastating consequences of motor vehicle accidents."  *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 174 (Colo. 2001). It was with this purpose in mind that the *DeHerrera* Court concluded that the UM/UIM statute "provides coverage for persons; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of vehicle."  30 P.3d at 175.  The *DeHerrera* Court held "that the UM/UIM statute requires that UM/UIM insurance apply to an insured person who purchases such coverage when injured in an accident caused by an underinsured motorist, irrespective of the vehicle the injured insured occupies at the time of injury."  *Id.*  Thus, UM/UIM coverage appears to attach to the person, not to the vehicle.  *See Snell v. Progressive Preferred Ins. Co.*, 260 P.2d 37, 40 (Colo. App. 2010) (citations omitted) ("Indeed, as a matter of law, once plaintiff had procured UM/UIM coverage, the number of vehicles on the policy was immaterial to that coverage because under Colorado law the coverage applies to the individuals insured, not to vehicles.").

Nonetheless, the facts do not necessarily support Plaintiff's position that the change to his and Tanya's policies at their request in April 2009 (*i.e.*, removing Tanya from the Pontiac policy and removing Plaintiff from the Ford policy), would have necessarily invoked Defendant's statutory obligation to notify Plaintiff of an opportunity to purchase additional UM/UIM coverage.  As explained above, that obligation occurs only on issuance or renewal

of a policy, pursuant to the plain language of the governing statute.[2] There is a legitimate question as to whether the circumstances here constitute a new issuance or a renewal.

This matter is complicated by the facts that Defendant complied with its initial obligation, and Plaintiff, as a policyholder of two jointly held policies, both selected and rejected UM/UIM coverage, but apparently did so with the intent of receiving the benefit of UIM coverage by virtue of paying for it in one of the jointly-held policies. In light of Plaintiff's understanding that he would be protected by the UIM benefits included in the policy covering the Ford (regardless of which vehicle he would be occupying in case of an accident), under which he was a named insured until April 16, 2009, the Court does not find it far-fetched that Plaintiff would have expected such benefit to follow him once he was removed from the Ford's joint policy, considering he maintained the Pontiac policy with the same insurer.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) (citation omitted). In light of this applicable standard in the context of the law and facts described herein, it is unclear whether the reformation claim would survive a motion for summary judgment at this stage of the proceeding. Accordingly, justice requires allowing Plaintiff to amend his Complaint to include his proposed reformation claim.

---

[2] The statute defines policy renewal as "the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of the policy beyond its policy period or term." Colo. Rev. Stat. § 10-4-601(11). The statute does not define "issuance" of a policy.

### B. Defendant's Proposed Amended Answer

The other side of the proverbial coin at issue is Defendant's requested amendment, which would remove from Defendant's Answer all admissions relating to the legitimacy of Plaintiff and Tanya's marriage, and would replace them with Defendant's assertion that Plaintiff and Tanya were not married, common-law or otherwise, at the time of the accident. [#29] at 3. Plaintiff clearly intends to use the above-described reformation claim "to eliminate [Defendant's] defense that [Plaintiff] lacks any UIM coverage because he was allegedly not married to [Tanya] at the time of the accident." [#26] at 4. Plaintiff believes, however, that Defendant's proposed amendment is unduly delayed and would be unduly prejudicial.

The Court concludes that Plaintiff's arguments against permitting amendment are mooted by the fact that, upon entry of Plaintiff's Amended Complaint, Defendant is entitled to answer or otherwise respond to Plaintiff's Amended Complaint. *See* Fed. R. Civ. P. 15(a)(3); *see also Estate of Howard v. Cnty. of El Paso, Colo.*, No. 10-cv-02740-CMA-MEH, 2011 WL 1562843, at *4 (D. Colo. Apr. 22, 2011) (recognizing "requirement to file another responsive pleading to an Amended Complaint"); *Robinson v. Dean Foods Co.*, No. 08-cv-01186-REB-CBS, 2009 WL 7233279, at *4 (Mar. 18, 2009) (citation omitted) ("Generally, when an amended complaint is filed, the previous complaint is wiped out and the operative complaint is the most recently filed version."). Plaintiff presents no authority indicating that Defendant should be hamstrung by its original Answer when faced with the new claim and corresponding allegations presented in Plaintiff's proposed Amended Complaint. Thus, the Court concludes that, in its forthcoming Answer to the Amended Complaint, Defendant may assert all appropriate defenses.

### III. Conclusion

Accordingly, for the reasons stated above and the entire record herein,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Amend [#26] is **GRANTED**, and the Clerk of Court is directed to enter the Amended Complaint located at Docket No. 26-2.

IT IS FURTHER **ORDERED** that Defendant's Motion to Amend Its Answer and Jury Demand [#29] is **DENIED AS MOOT** in light of the entry of Plaintiff's Amended Complaint. Defendant shall answer or otherwise respond to the Amended Complaint on or before **March 19, 2012**.

Dated: March 5, 2012

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge